THE STATE OF IOWA, Appellee, v. JOHN GAINOR, Appellant.

1. **Homicide:** JUSTIFICATION: SELF-DEFENSE: EVIDENCE. While a peace officer was expostulating with one of a crowd of drunken men, who was making considerable noise on the street, the defendant interfered as against the officer, and struck at him with his fist, and thereupon a scuffle ensued between the officer and the defendant, and when finally separated, and while the defendant held one of the arms of the officer, and another of the crowd the other, the defendant drew his revolver and shot the officer through the heart, causing his death immediately. *Held*, that the killing was without excuse, either upon the ground of self-defense or any other.

2. ———: EVIDENCE. One of the witnesses for the state, who saw the affray from the window of his bedroom, testified that he got up as soon as he heard the noise of the crowd in the street, for the reason that one P. had told him that the crowd was out. *Held*, that the evidence was without prejudice to the defendant.

3. ———: ———: RES GESTÆ. It was shown by the state that imme-
diately after the shooting the defendant pointed his revolver at
another peace officer, who had come to the rescue of the officer
killed, and had struck the defendant and others with his cane during
the encounter preceding the shooting. *Held*, that the evidence was
competent as part of the *res gestæ.*

4. ———: ———: DECLARATIONS. The declaration of the defendant,
upon going to the hotel where he lived, that he had killed a police-
man, and wished he had killed the other, *held* to be competent as an
admission of the killing of the officer, and as showing his feelings
towards him when the act was committed.

5. ———: ———: CONDUCT OF DEFENDANT PRECEDING CONFLICT. The
state was permitted to show that the defendant and his party were in
a house of prostitution preceding the conflict with the officer on the
street. *Held*, that the evidence being competent, the fact that it
would have the effect to prejudice the jury against the defendant
was no reason for excluding it.

6. ———: ———. The fact that the deceased officer was in a club
room the night before the shooting, and there drank intoxicating
liquors, *held* to be too remote to have any bearing upon the cause of
the affray upon the night of the homicide.

*Appeal from Plymouth District Court.*—HON. SCOTT M.
LADD, Judge.

TUESDAY, JANUARY 19, 1892.

THE defendant was indicted for murder in the first
degree. He was tried upon the indictment, and con-
victed of the crime of manslaughter, and sentenced to
imprisonment in the penitentiary for eight years, from
which sentence and judgment he appeals.—*Affirmed.*

*Argo, McDuffie & Reichmann*, for appellant.

*John Y. Stone*, Attorney General, and *Thos. A.
Cheshire*, for the State.

ROTHROCK, J.—I. It is conceded that the defend-
ant shot and killed Samuel Hamilton at about twelve
1. HOMICIDE: jus-   o'clock of the night of the twenty-fourth
tification: self-   day of November, 1888, at the city of Le
defense:
evidence.          Mars, in Plymouth county. Hamilton was
at that time acting as a special merchants' police, by

and with the consent of the city council. One Philip
Rembe was a constable, and on the night of the homi-
cide he was acting as night police, and was, during the
night and up to the time of the tragedy, acting in
concert with Hamilton. They were not together all the
time, but it appears that they had apprehensions that
the residents of the city might be disturbed in the
night, and they were on the alert to guard against any
breaches of the peace. Some six or seven men, includ-
ing the defendant, commenced a drunken carousal in
the city during the early hours of the night. They
entered a club house by the back door or through win-
dows, and occupied it for a time, and then repaired to a
house in what is called "The Addition," and returned
to the club house and drank and caroused. One of
the party, named Harter, while in the club house, was
struck by the defendant with such violence as to give
him what is called a "black eye." It appears that it
was known that this party of men was around the
town. After leaving the club house, the party was
going along the streets towards a barber shop, where
one of them was employed. They were very boister-
ous. Their language was loud, vulgar, and profane.
One of them, named Eckert, was particularly noisy.
He was leading the party, and came up to where
Hamilton stood on the street. Hamilton expostulated
with Eckert, and told him if he did not keep quiet he
would be compelled to arrest him. He repeated the
request that Eckert should cease the disturbance, with-
out effect. At about this time the defendant in some
way interfered, and the parties came together, and
were in a scuffle, when Rembe, the constable, appeared
armed with a walking stick, and took part in the affray
in aid of Hamilton. In a very short time the parties,
who had clinched and were actually engaged in the
conflict with Hamilton, separated, and the defendant
discharged a revolver at Hamilton, and shot him
through the heart, and he expired.

The theory of the defense was that Hamilton, without any cause, made an assault on the defendant and struck him upon the head a number of times with a policeman's "billy," and greatly injured him; and that the defendant fired the shot in the honest belief, as a reasonable man, that it was necessary to do so in defense of his life, or to save himself from great bodily injury. It is not claimed in argument in behalf of the defendant that the verdict is not supported by the evidence; and we may say that the jury was fully warranted in finding from the evidence that the defendant made the first assault on Hamilton by striking at him with his fist. The defendant was the friend of Eckert, with whom Hamilton was expostulating. Immediately upon the striking of the blow by the defendant, the parties closed, and there was a general *melee*. The drunken crowd were resisting Hamilton, and he used his "billy" with considerable effect upon the defendant. At about this time Rembe appeared on the scene, and he testifies that the defendant was then holding one of Hamilton's arms, and one of the others of the party, whom the witnesses designated as the "Sioux City gambler," held his other arm; and that Rembe struck them repeated blows on their heads with his cane, and caused them to release Hamilton, and that immediately thereafter the defendant fired the fatal shot. It is also in evidence that after the tragedy, and after the defendant went to the hotel where he lived, he said "he had killed the son of a bitch of a policeman, and wished he had killed the other." As we read this record, there was no excuse for the homicide, either upon the ground of self-defense or any other. The deceased was a peace officer, and when he expostulated with Eckert, because he was drunk and disorderly, the defendant was an aggressor when he interfered. Indeed, it was the right and duty of the officer to arrest the whole party; for, according to their own evidence, their intoxicated condition differed only in degree.

II. Certain objections are made by counsel for the defendant to rulings of the court on the evidence.

2. ——: evidence.   One of the witnesses for the state, who saw the affray from the window of his bedroom, was permitted to state that he got up as soon as he heard the noise of the crowd in the street, and that the reason why he got up was that one Priestly had told him "that the crowd was out." It is claimed this tended to prejudice the defendant in the estimation of the jury. The objection was without merit. "The crowd was out," and whatever prejudice, if any, there might have been on that account, was shown by the actual fact that such was the case. The reason given by the witness for getting up from his bed added nothing to the fact.

III. It appears from the evidence that, immediately after shooting Hamilton, the defendant pointed his

3. ——: ——: res gestæ.   revolver at Rembe. It is claimed this evidence was improperly admitted. We think otherwise. It was essentially a part of the *res gestæ*, and the court did not err in holding that it was competent.

IV. It is also claimed that the court erred in permitting the state to prove what the defendant stated,

4. ——: ——: declarations.   as above set out, at the hotel after he shot Hamilton. The evidence was competent. It was a declaration of the party charged in relation to the alleged criminal act, which the state had the right to introduce, not only as an admission that the defendant killed Hamilton, but as showing his feeling towards him when he did kill him.

V. Another objection is that one of the witnesses was permitted to state that the house in "The

5. ——: ——: conduct of defendant preceding conflict.   Addition," above referred to, where the defendant and his party went, was a house of prostitution. There is no merit in this objection. It was competent for the state to show the acts and conduct of the defendant and his

associates during the night previous to the tragedy.
It is said that this prejudiced the jury against the
defendant.    This was no reason for excluding the evi-
dence unless it was incompetent.

VI. Other objections are made to certain rulings
on the admission and exclusion of evidence.    One of
6. —: —.          them is that the defendant was not per-
mitted to show that Hamilton was in a
club room the night before the tragedy, and that he
then and there drank intoxicating liquors.    This evi-
dence was entirely incompetent.    It is not claimed that
Hamilton was intoxicated at the time, and, if he had
been intoxicated, it was too remote to have any bearing
upon the cause of the affray on the night of the homi-
cide.    Another objection was made to the introduction
of certain evidence tending to impeach one of the
defendant's witnesses, by contradictory statements
made by him when he testified before the coroner's
jury.    It was claimed that the proper foundation was
not laid to authorize the introduction of the impeaching
evidence.    This is a mistake.    The foundation was laid
specifically as to time, place, and circumstance.

Lastly, it is urged that the court erred in the
fifteenth, sixteenth, seventeenth, and eighteenth para-
graphs of the charge to the jury.    The ground of
objection is that the court made the defendant's right
of self-defense depend upon how the situation sur-
rounding the parties appeared to Hamilton, the
deceased, and that, if Hamilton used no more force
than appeared to him to be necessary, then the
defendant was not excused for defending himself.    We
have not thought it necessary to set out these instruc-
tions at length in this opinion.    The charge to the jury
is quite voluminous, and, when considered together, it
is not vulnerable to any valid objection.    It correctly
defines the rights of the parties upon the question of
self-defense.    It must be remembered that the deceased
was a peace officer, whose duty it was to preserve public

order during the night, and that the defendant was one of a party who were engaged in disturbing the peace, and was liable to arrest.

Upon an examination of the whole record, we are satisfied that there was no error in any ruling made by the court during the trial, and that the judgment is just, and should be AFFIRMED.